SARAH RITTENHOUSE, Appellant, *vs.* MARY MELVINA SMITH *et al.* Appellees.

*Opinion filed October 26, 1912.*

1. EXECUTORS AND ADMINISTRATORS—*sale by administratrix to third party for her benefit is constructively fraudulent.* A sale by an administratrix to a third party under a secret arrangement that the latter shall hold the legal title for her is constructively fraudulent and contrary to the policy of the law, and as against the devisees of the third party a court of equity will not aid the administratrix in establishing the alleged trust.

2. LACHES—*a court of equity will not aid in enforcing a stale claim.* A court of equity will not aid in establishing a trust in the complainant in land conveyed to her husband more than thirty years before the bill was filed, where no reasonable explanation is made for the delay in asserting her claim.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

KARCH & HEIMBERGER, (R. D. W. HOLDER, and B. A. CAMPBELL, of counsel,) for appellant.

FRED B. MERRILLS, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Sarah Rittenhouse ·filed a bill in the circuit court, of St.. Clair county seeking to have the legal title to forty acres of land declared to be in her and to cancel an administrator's deed made to her deceased husband, William J. Rittenhouse, as a cloud upon her title. The theory of the bill is that appellant made an arrangement with her husband to purchase the land in question at an administrator's sale and that she furnished the purchase money, whereby a resulting trust was created in her favor which she is now entitled to have declared. The executors and trustee under the last will ·of William J. Rittenhouse interposed a general and special demurrer to appellant's amended bill, which was sustained, and the appellant having elected to abide by her amended bill the court dismissed it for want of equity, and complainant below has prosecuted an appeal to this court from that decree.

The facts set up in the amended bill, so far as the same are necessary to a determination of the questions involved, are as follows: The real· estate in question formerly belonged to Frederick Aull, and comprised a part of a farm upon which Aull resided with his family until a few years before his death, which occurred on September 5, 1872. At the time of his death Aull left a widow and four children, the youngest of whom was five years of age and the oldest eleven. The widow, Sarah Aull, and Thomas Glenn, her brother, were appointed administrators of the estate of Aull in October, 1872. The estate consisted of about $8000 in personal property and one hundred and sixty acres of farm lands. Claims in excess of the personal property were probated and allowed against the estate, and it became necessary to sell a portion of the real estate to pay the debts. In 1875 the widow married William J. Rittenhouse. The bill alleges that after the death of Frederick Aull, and prior to her marriage to Rittenhouse, appellant managed the farm and applied the profits made to the pay-

ment of the debts of her former husband's estate, and that Rittenhouse was without means and contributed little or nothing, beyond his labor, toward the income of the family. In 1879 the administrators filed a petition in the county court praying for an order to sell a portion of the real estate to pay the remainder of the debts against Aull's estate. The forty acres of land in question were sold under the order of the court and William J. Rittenhouse became the purchaser for $3120, for which he executed notes due in six and twelve months, with personal security, and a mortgage upon the premises. When the notes fell due the money to pay them was borrowed by Rittenhouse and his wife and the debt due the estate was paid with the proceeds of this loan. The money was borrowed from Frank Neibruegge. The bill alleges that the money with which the Neibruegge loan was paid was made by appellant on the farm and that no portion of it was contributed by her husband. After the forty acres in question were cleared of the Neibruegge mortgage the title remained in the name of Rittenhouse, and he and appellant occupied the farm of which this forty was a part until 1907, when they left the farm and moved to Belleville, where Rittenhouse died testate in May, 1911. By his last will Rittenhouse devised his property to his two daughters by a former marriage. The bill alleges that Rittenhouse did not own the land in question but held the naked legal title in trust for appellant, and that as against his devisees appellant is entitled to have the will and the administrator's deed set aside as a cloud upon her title and she adjudged to be the legal and equitable owner of the premises.

There are a number of grounds urged by appellees in support of the decree dismissing the bill, the most important of which are, that the appellant does not come into equity with clean hands; that she is barred by *laches;* that she is estopped by her deed and report of sale to the county court; and that equity will not aid one standing in a fiduciary re-

lation to reap the benefit of an arrangement by which a trustee becomes the purchaser, either directly or indirectly, of the subject of the trust. It will not be necessary to consider all of the questions raised, since if any one of the defenses insisted upon is sustained the decree below must be affirmed regardless of the view we might have in respect to other questions.

The bill alleges, in substance, that an arrangement was entered into between appellant and her husband by which she was to furnish the purchase money and the land was to be purchased in the name of her husband and subsequently be conveyed to her. At the time this alleged arrangement was entered into, as well as at the time of the sale, appellant was one of the administrators of her former husband's estate, and as such the law imposed upon her the duty to faithfully and conscientiously dispose of the assets of said estate for the best interest of the creditors and heirs. To permit her to enter into a secret arrangement to have the land bid in by a third party for her benefit would be to bring her personal interest in conflict with her duty as administratrix, which is constructively fraudulent and contrary to the policy of the law. An administrator cannot become the purchaser at his own sale, either directly or through the interposition of a third party. (*Elting* v. *First Nat. Bank,* 173 Ill. 368; *Miles* v. *Wheeler,* 43 id. 123.) The above rule is well established and rests on the self-evident proposition that the interests of the buyer and seller of the same property are necessarily antagonistic, and hence the law will not permit a trustee to occupy inconsistent positions, either in respect to the beneficiaries or the subject matter of the trust. In *Lagger* v. *Mutual Union Loan Ass'n,* 146 Ill. 283, this court said: "The law forbids an administrator to purchase at his own sale, whether the purchase is in his own name or the name of another for his use." And in *Miller* v. *Rich,* 204 Ill. 444, on page 452, the law in this State was announced as follows:

"In *Miles* v. *Wheeler,* 43 Ill. 123, it was held that the purchase of real estate belonging to the deceased, by an administrator through the intervention of a third party at his own sale, is fraudulent *per se;* that it matters not that the sale was at public auction for a fair price and made through the medium of a third party as a bidder and to whom the administrator conveyed; that the law forbids all administrators, executors and others sustaining a fiduciary relation from dealing on their own account with the thing or the persons falling within that trust or relation; that it avails nothing to show that the intentions of the administrator were honest and that there was no fraud in fact; that the law shields him from all temptation by the inflexible rule that he cannot buy at his own sale; that the reason of the rule is that the interests of the buyer and seller of the same property are necessarily antagonistic, and the only safe rule is one which absolutely forbids a trustee to occupy two positions inconsistent with each other."

No case has been cited, and we would be surprised if one could be found, where a court of equity has lent its aid to a trustee to perfect his title to property purchased at his own sale. Again, it is over thirty years since appellant executed the administrator's deed in question. No sufficient or satisfactory explanation is made for the unreasonable delay in asserting her claim. If everything else were out of the case we see no possible escape for appellant from the doctrine of *laches,* which precludes courts of equity from aiding in the enforcement of stale claims.

Since the decree below can safely be rested upon the grounds above considered, a discussion of the other points involved is unnecessary.

The decree below is affirmed.           *Decree affirmed.*